UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

The State of New York, Alexander B.
Grannis, as Commissioner of the New York
State Department of Environmental
Conservation, and the New York State
Department of Environmental Conservation,

               Plaintiffs,        08-CV-2503
                                           (CPS)(RLM)

United Boatmen of New York, Inc., New
York Fishing Tackle Trade Association,
Inc., and the Fishermen's Conservation
Association,

             Intervenor-Plaintiffs

  - against -

                                             MEMORANDUM OPINION
Carlos Gutierrez, in his official capacity  AND ORDER
as Secretary of the United States
Department of Commerce, the United States
Department of Commerce, Conrad C. Lauten-
bacher, in his official capacity as Under
Secretary of Commerce and as Administrator
for the National Oceanic and Atmospheric
Administration, James W. Balsiger, in his
official capacity as Acting Assistant
Administrator for the National Marine
Fisheries Service, and the National Marine
Fisheries Service,

               Defendants.

-------------------------------------X

SIFTON, Senior Judge.

    Plaintiffs the State of New York, Alexander B. Grannis as Commissioner of the New York State Department of Environmental Conservation, and the New York State Department of Environmental Conservation (together, "plaintiffs"), along with intervenor-plaintiffs United Boatmen of New York, Inc. ("UBNY"), New York

Fishing Tackle Trade Association, Inc. ("NYFTTA"), and the Fishermen's Conservation Association ("FCA") (together, "intervenor-plaintiffs"), bring this action against defendants Carlos Gutierrez, in his official capacity as Secretary of the United States Department of Commerce, the United States Department of Commerce, Conrad C. Lautenbacher, in his official capacity as Under Secretary of Commerce and Administrator for the National Oceanic and Atmospheric Administration, the National Oceanic and Atmospheric Administration, James W. Balsiger, in his official capacity as the Acting Assistant Administrator for the National Marine Fisheries Service, and the Atlantic States Marine Fisheries Commission (the "ASMFC" or "Commission"). Plaintiffs claim that the final management rule for the 2008 recreational summer flounder fishery issued by the Department of Commerce (the "DOC"), through the National Marine Fisheries Service (the "NMFS"), pursuant to the Magnuson-Stevens Fishery Conservation and Management Act, as amended in 1996 by the Sustainable Fisheries Act, 16 U.S.C. §§ 1801, *et seq*. (the "MSA"), violates the MSA as well as standards of decision making under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (the "APA"). In addition to these claims, intervenor-plaintiffs further claim that that the final management rule for the 2008 recreational summer flounder fishery issued by the ASMFC violates the ASMFC Compact & Rules and Regulations, Pub. L. 77-539 (1942),

*as amended by* Pub. L. 81-721 (1950) ("ASMFC Compact"), the Atlantic Coastal Fisheries Cooperative Management Act, Pub. L. 103-206, 16 U.S.C. §§ 5101-5108 (the "ACFCMA" or "Fisheries Act"), the ASMFC Interstate Fisheries Management Program Charter (hereinafter "ISFMP Charter," *available at* http://www.asmfc.org/publications/), and the APA.

Presently before this Court is defendant ASMFC's motion to dismiss intervenor-plaintiffs' Complaint in Intervention ("Intv. Cplt."), insofar as that Complaint states a claim against ASMFC, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that intervenor-plaintiffs have no right of action against ASMFC. For the reasons set forth below, defendant ASMFC's motion is denied.

## BACKGROUND

Familiarity with the underlying facts and statutory background of this case are presumed, based on my prior decision in this matter. *See New York v. Gutierrez*, No. 08-CV-2503, 2008 WL 5000493 (E.D.N.Y. Nov. 20, 2008). Acronyms employed here are defined in the November 20, 2008 memorandum opinion. What follows is a recent procedural history of the instant motion.

On November 20, 2008, I permitted intervenor-plaintiffs to intervene in this action and to join ASMFC as a defendant. *Id.* I reasoned that intervenor-plaintiffs had a colorable claim to a right of action against ASMFC on the grounds that ASMFC is a

"quasi-federal agency," such that ASMFC's actions are subject to judicial review under the APA. *Id.* at 13. I noted, however, that my decision was rendered "without prejudice to ASMFC's right to move to dismiss on the ground that it is not a quasi-federal agency, or on such other grounds as may exist." *Id.* at 14.

On December 19, 2008, intervenor-plaintiffs filed their Complaint in Intervention. In addition to mirroring plaintiffs' claims against the federal defendants and asserting an additional claim, the Complaint in Intervention states claims against ASMFC for violations of the ASMFC Compact, the Fisheries Act, the ISFMP Charter, and the APA. Intv. Cplt. ¶¶ 2-3.

On January 2, 2009, ASMFC filed the instant motion to dismiss.

**DISCUSSION**

I. <u>Motion to Dismiss Standard</u>

In considering a motion pursuant to Rule 12(b)(6), a court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal citations and quotations omitted), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). In a motion to dismiss, "[t]he issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). Dismissal is appropriate only when it "appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir. 2000).

Nevertheless, to survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility." *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1970 (2007). Although the complaint need not provide "detailed factual allegations," *id*. at 1964; *see also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007)(applying the standard of plausibility outside *Twombly*'s anti-trust context), it must "amplify a claim with some factual allegations . . . to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). In other words, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns*, 493 F.3d at 98 (quoting *Twombly*, 127 S.Ct. at 1965). In addition, a complaint should be dismissed under Rule 12(b)(6) if a court finds that the plaintiff's claims are barred as a matter of law. *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86

(2d Cir. 2000).

## II. ASMFC's Motion to Dismiss

The discrete issue presented here is whether intervenor-plaintiffs have a private right of action against ASMFC. Neither the ASMFC Compact, the acts of Congress approving it, *see* Pub. L. No. 77-539 (1942); Pub. L. 81-721 (1950), nor the Fisheries Act, nor the ISFMP Charter expressly provide for judicial review of ASMFC actions. In the absence of express Congressional authorization, the question is whether Congress intended to create an implied right of action against the ASMFC, or whether another federal statute authorizes suit against the ASMFC. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress").

In my previous decision, I concluded that the evidence weighed against finding that Congress intended to create an implied right of action arising under the ASMFC Compact, its authorizing legislation, or the Fisheries Act. *Gutierrez*, 2008 WL 5000493 at *11. There is no question, however, that Congress intended to create a private right of action against federal agencies by means of the APA -- a statute enacted to promote agency accountability. *See, e.g.*, *Japan Whaling Ass'n v. American Cetacean Soc.*, 478 U.S. 221, 230 n.4 (1986) ("The 'right of action' in [suits contesting agency action or inaction] is

expressly created by the Administrative Procedure Act (APA)"); *Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008) ("In determining whether a suit can be brought under the APA, '[w]e begin with the strong presumption that Congress intends judicial review of administrative action'") (citing *Bowen v. Mich. Academy of Family Physicians*, 476 U.S. 667, 670 (1986)). The issue here is whether ASMFC qualifies as the type of entity to which Congress intended the APA to apply.

Section 10 of the APA authorizes suit by any person "suffering legal wrong because of agency action." 5 U.S.C. § 702. Under the APA, the term "agency" is defined as each "authority of the Government of the United States." 5 U.S.C. § 551(1). As I noted in my previous decision, "[t]he Commission is a creature of interstate compact, not a federal agency, and thus the presumption [that a right of action exists under the APA] does not apply to ASMFC." *Gutierrez*, 2008 WL 5000493, at *10. Nevertheless, whether Congress designates an entity as a federal agency does not end the inquiry as to whether the entity in fact operates as a federal agency. *See, e.g.*, *Government Nat. Mortg. Ass'n v. Terry*, 608 F.2d 614 (5th Cir. 1979) (noting that "Congress need not label an entity 'an agency'" in order for a court to find that the entity fits a statutory definition of "agency"). Whether an entity is akin to a federal agency is an important consideration, as Congress intended the private right

of action available under the APA to render federal agencies accountable for their actions.  *See, e.g.*, *Bowen*, 476 U.S. at 670-73.  It follows that Congress may not, through legislation imposing federal obligations, oversight, funding, or otherwise, transform an entity into something closely resembling a federal agency, and yet escape the accountability mechanism it intended to apply to such federal agencies -- unless, of course, it specifically provides that the APA shall not apply to the entity in question, which is not the case here.[1]

A.   *"Quasi-Federal Agency" Status*

Several cases brought against interstate compact agencies have considered the question of whether the entities created by those compacts had become so federal in character that they were amenable to suit under the APA, sometimes employing the term

---

[1] There is no requirement that Congress affirmatively provide in an agency's authorizing legislation that APA review of that agency's actions shall be available in order for the APA to apply.  In fact, a presumption exists to the contrary:  "[a]n agency action is unreviewable only when the statute precludes judicial review, 5 U.S.C. § 701(a)(1), or if the 'agency action is committed to agency discretion by law.' 5 U.S.C. § 701(a)(2)." *M&T Mortg. Corp. v. White*, No. 04 CV 4775, 2006 WL 47467, at *7 (E.D.N.Y. Jan. 9, 2006).  Thus, ASMFC's argument that, had it so intended, Congress would have provided that the APA applies to ASMFC, does not imply that APA review of ASMFC actions is unavailable.  By contrast, where Congress has intended that the APA should *not* apply to an interstate compact agency, it has expressly excluded the interstate compact entity from the APA definition of "agency." *See, e.g.*, William S. Morrow, Jr., The Case for an Interstate Compact APA, 29.2 Admin & Reg. L. News 12, 13 (2004) (listing examples of compact entities which Congress has expressly stated do not constitute federal agencies, including the Pacific Northwest Electric Power and Conservation Planning Council Compact, 16 U.S.C. § 839b(a)(2)(A); the Delaware River Basin Compact, § 15.1(m); and the Susquehanna River Basin Compact, § 2(1)).

"quasi-federal agency" to describe such compact authorities.[2] *See, e.g.*, *Seal & Co. v. Washington Metropolitan Area Transit Authority*, 768 F.Supp. 1150, 1155-56 (E.D. Va. 1991) ("because of the strong 'federal interest' in the WMATA Compact, WMATA should be treated as a federal agency subject to the APA"); *Elcon Enterprises v. WMATA*, 977 F.2d 1472, 1479-80 (D.C. Cir. 1992) (assuming without deciding, based in part on *Seal*, that WMATA should be treated as a federal agency); *Coal. for Safe Transit, Inc. v. Bi-State Dev. Agency*, 778 F. Supp. 464, 467 (E.D. Mo. 1991) ("'[t]he degree of federal interest and participation in the Metro Link project' warranted a conclusion that Bi-State is a 'quasi-federal agency'" subject to APA review) (citing *Union Switch and Signal, Inc. v. Bi-State Dev. Agency, et al.*, No. 91-1401C(7) (E.D. Mo. 1991) (unpublished memorandum)); *The Bootery, Inc. et al. v. Washington Metro. Transit Auth. et al.*, 326 F. Supp. 794, 799 (D.C Cir. 1971) ("[i]n view of the federal interest in the Compact, there appears no reason why the general

---

[2] ASMFC contends that there is "no support for the proposition that a right to review can be recognized without the normal requirement of specific congressional intent to create a private right. . . . To the extent dicta in two of the 'quasi-federal agency' cases may be read to support such a theory, it is plainly inconsistent with controlling precedent from the Supreme Court and the Second Circuit." Memorandum in Support of Defendant [ASMFC]'s Motion to Dismiss ("ASMFC Mem.") at 9. ASMFC is correct that congressional intent to create a private right of action is a necessary prerequisite to finding that such a right exists. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. at 286. The issue before the Court, however, is whether ASMFC functions as a quasi-federal agency, so that the private right of action Congress expressly created in the APA applies to ASMFC. Thus, the question of Congressional intent -- essential where the issue is whether an implied right of action exists -- is not as significant a factor where the issue, as here, is whether an express right of action is available to a given party or parties.

criteria for standing to challenge action under a federal statute should not be employed"); *Otis Elevator Co. v. Washington Metro. Transit Auth.*, 432 F. Supp. 1089, 1094 (D.C. Cir. 1976) (same).

In dicta, both the Third and the Eighth Circuits (the latter in an unpublished opinion) have interpreted the above cases as identifying three factors "relevant to whether a compact authority warrants the quasi-federal agency classification: (1) whether the originating compact is governed, either explicitly or implicitly, by federal procurement regulations; (2) whether a private right of action is available under the compact; and (3) the level of federal participation[.]" *Am. Trucking Ass'n, Inc. v. Delaware River Joint Toll Bridge Comm'n*, 458 F.3d 291, 304 n.10 (3d Cir. 2006); *see also Heard Commc'ns, Inc. v. Bi-State Dev. Agency*, 18 Fed.Appx. 438, 439-40 (8th Cir. 2001) (unpublished).

ASMFC argues that cases above are distinguishable from this case because they all concern transportation-related interstate compact agencies, which, unlike the Commission, deal directly with private parties in securing public works contracts. While it is true that the Commission's work is not related to transportation and does not entail direct dealings with private parties, ASMFC's decisions have no less impact on aggrieved fishermen and the businesses that serve them than the decisions of transport agencies have on aggrieved bidders for public

contracts. ASMFC further argues that because some of the cases cited above discussed only whether the plaintiffs in those cases had standing to sue under a federal statute, and did not consider whether an implied private right of action existed under the relevant compact legislation, the cases are inapposite. The emphasis on standing, however, does not eliminate the usefulness of these cases. Prior analyses of the circumstances under which an interstate compact entity should be subject to APA review are instructive.

B.  *Application of Quasi-Federal Agency Standards to ASMFC*

Because the compact at issue here bears no relationship to federal procurement regulations, I do not consider the first factor identified in *American Trucking* and *Heard*.[3]  With regard to the second factor, I have already determined that an implied right of action is not available under the ASMFC Compact. *See Gutierrez*, 2008 WL 5000493, at 11.  Therefore, the analysis of whether the Commission qualifies as a quasi-federal agency turns on the most significant of the three factors: the level of federal participation in ASMFC.

In determining the degree of federal participation in a compact agency, several considerations are relevant.

---

[3] To the extent that this first factor concerns not federal procurement regulations specifically, but instead whether the interstate compact is governed explicitly or implicitly by a body of federal regulation, I note that, as further discussed below, the Fisheries Act imposes significant federal obligations on the ASMFC. *See, e.g.*, *Gutierrez*, 2008 WL 5000493, at *2-3.

Congressional approval of an interstate compact is one factor to be considered, *see, e.g.*, *The Bootery*, 326 F. Supp. at 798-99, although this factor is not dispositive. *Old Town Trolley Tours v. Washington Metro. Area Transit Comm'n,* 129 F.3d 201, 204 (D.C. Cir. 1997) (it does not follow from Congress' approval of compact that compact created federal agency governed by APA). Other factors bearing on the degree of federal participation include whether there is a federal role in appointing compact agency members, whether federal funding is authorized for the compact agency, and whether the compact furthers a federal objective. *See, e.g.*, *Seal*, 768 F.Supp. at 1156-57; Morrow, *supra* n.1, at 13. The federal participation inquiry is fact-intensive and case-specific; the presence of one or more federal participation factors does not automatically convert an entity created by interstate compact into a quasi-federal agency. *See, e.g.*, *California Tahoe Regional Planning Agency v. Sahara Tahoe Corp.*, 504 F. Supp. 753, 762-63 (D. Nev. 1980) (approval of the compact by Congress and limited appointment power of president did not establish TRPA as federal agency).

In this case, as discussed in my previous opinion, the level of federal participation in the Commission is high. ASMFC was expressly authorized by Congress under the Compact Clause. *See* ASMFC Compact, Preamble. Congress' enactment of the Fisheries Act provided federal funding for the Commission, *see* 16 U.S.C. §§

5107, 5108, and indeed, intervenor-plaintiffs have submitted evidence that over 90% of ASMFC's operating budget consists of federal funds. *See* Declaration of Philip L. Curcio, dated February 2, 2009, Ex. 1 (copy of 2006-2007 ASMFC operating budget from ASMFC's 2007 Annual Report).[4] The Fisheries Act imposes federal obligations on ASMFC, including the obligation to base FMPs on "the best scientific information available," 16 U.S.C. § 5104(2)(A), as well as to provide "adequate opportunity for public participation" in the FMP preparation process.[5] 16 U.S.C. § 5104(a)(2)(B). The ASMFC serves the federal objective of conserving and managing fishery resources in the United States, a goal expressed in the federal MSA. *See* 16 U.S.C. § 1801(a)(6); 16 U.S.C. § 5101(a)(6). Federal agencies directly participate in ASMFC deliberations and decisions: the NMFS and the United States Fish and Wildlife Service serve as voting Board members. *See* ISFMP Charter, § 4(b)(3).

The high level of federal participation in ASMFC does not,

---

[4] Although extrinsic evidence generally may not be considered on a Rule 12(b)(6) motion to dismiss, a court may consider documents a plaintiff relies on that are integral to the complaint, as well as public documents of which the plaintiff has notice. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991). Defendant ASMFC has not objected to plaintiff's submission of the ASMFC budget for the purposes of this motion.

[5] In addition, at oral argument, counsel for intervenor-plaintiffs pointed out that federal regulations for the 2008 summer flounder federal conservation equivalency program provide that ASMFC, not NMFS or another federal agency, must establish state-by-state allocations delimiting the number of permissible recreational summer flounder landings in each state for the 2008 season. Fisheries of the Northeastern United States; Recreational Management Measures for the Summer Flounder, Scup, and Black Sea Bass Fisheries; Fishing Year 2008, 73 Fed. Reg. 29,993, 2008 WL 2148727 (May 23, 2008) (to be codified at 50 C.F.R. pt. 648).

however, automatically transform ASMFC from an association of state representatives into a quasi-federal agency.  By its own terms, the ASMFC Compact expressly states that "[n]othing in this compact shall be construed to limit the powers of any signatory state."  ASMFC Compact, Art. IX.  At the same time, the Fisheries Act renders FMPs prepared by the Commission binding on ASMFC member states.  The Fisheries Act expressly requires each state identified in an FMP developed by the Commission to implement and enforce the FMP, usually through state-enacted laws or regulations.  16 U.S.C. §§ 5104(b)(1) ("Each State . . . shall implement and enforce the measures of such plan within the timeframe established in the plan"); 16 U.S.C. § 5102(10) ("The term 'implement and enforce' means to enact and implement laws or regulations as required to conform with the provisions of a coastal fishery management plan and to assure compliance with such laws or regulations by persons participating in a fishery that is subject to such plan").  Thus, ASMFC member states are bound by Commission decisions, which are controlled in part by federal standards.  In addition, the Fisheries Act confers authority on the Commission to monitor a state's implementation and enforcement of Commission FMPs.  16 U.S.C. § 5104(c).  If the Commission determines that a state is not in compliance with its FMP, the Commission is required to provide notice to the United States Secretary of Commerce.  16 U.S.C. § 5105.  While it is

true that the Secretary must make an independent determination that the FMP's measures are necessary for fishery conservation before taking action to enforce the Commission's FMP (namely, by imposing a fishing moratorium), this separation of the ASMFC's and the Secretary's powers appears more formal than substantive. It does not alter the fact that the Commission's FMPs are binding on the states, that the Commission monitors state compliance with its FMPs, and that the Commission's determination regarding a state's non-compliance is critical as to whether a moratorium on fishing will be imposed on that state.  Considered together, these congressionally authorized activities rise to the level of de facto regulatory power exercised by ASMFC on behalf of the federal government.  Given the high level of federal participation in ASMFC, the Commission's de facto regulatory power is sufficient to transform the Commission into a quasi-federal agency for the purposes of APA review.[6]

C.  *Federalism Concerns*

ASMFC argues that recognizing the Commission as a quasi-federal agency and subjecting it to APA review runs contrary to

---

[6] As previously noted, at least one legal commentator has adopted the view that the Commission is a quasi-federal agency.  *See* Shaun M. Gehan, Atlantic States Marine Fisheries Commission & the Atlantic Coastal Fisheries Cooperative Management Act:  Constitutional Issues and Availability of Judicial Review of Commission Regulations (Apr. 13, 2005) at 10, *available at* http://www.abanet.org/adminlaw/interstate/Gehan_ASMFC_Paper.pdf (last visited Nov. 13, 2008) ("It may well be, largely as a necessary outgrowth of the fact that the ACFCMA essentially 'federalizes' all fishery management plans and regulations promulgated by the ASMFC, that the Commission is the epitome of a 'quasi-federal agency.'")

general principles of federalism.  First, ASMFC points out that interstate compact agencies are, in some cases, entitled to Eleventh Amendment immunity from suit.[7]  *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 50-53 (1994).  However, in *Hess*, the Supreme Court acknowledged the principle that where an agency's potential losses do not legally or practically burden a state's coffers, Eleventh Amendment concerns are not raised.  *Hess*, 513 U.S. at 51 ("If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise?  When the answer is "No" - both legally and practically - then the Eleventh Amendment's core concern is not implicated").  As previously mentioned, ASMFC receives over 90% of its funding from the federal government.  There is no evidence before me that the Commission can or has ever operated at a loss capable of affecting its member States' treasuries.  The present action seeks injunctive relief, not monetary damages.  Accordingly, Eleventh Amendment concerns are not at issue here.

ASMFC also argues that general considerations of state sovereignty preclude a finding that the Commission is a quasi-federal agency that may be held accountable for its actions under

---

[7] The Eleventh Amendment to the United States Constitution recognizes the sovereign immunity of individual states and provides as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

the APA. According to ASMFC, the Commission is composed of state legislators, state executive officials, and state gubernatorial appointees, who coordinate traditional state police powers over natural resources -- powers that the ASMFC Compact and Congress intended to preserve. Finding that the APA applies to ASMFC is inappropriate, ASMFC argues, where the states parties to the ASMFC never agreed to subject themselves to the APA.

I am not insensitive to this concern. As previously discussed, the ASMFC Compact expressly states that "[n]othing in this compact shall be construed to limit the powers of any signatory state." ASMFC Compact, Art. IX. Further, the Fisheries Act reaffirms the principle that individual states are primarily responsibly for management of fisheries in state waters:

> The responsibility for managing Atlantic coastal fisheries rests with the States, which carry out a cooperative program of fishery oversight and management through the Atlantic States Marine Fisheries Commission. It is the responsibility of the Federal Government to support such cooperative interstate management of coastal fishery resources."

16 U.S.C. § 5101(a)(4). These passages show that Congress intended to respect, not to restrict, the states' powers in the ASMFC Compact and related legislation. However, Congress' authorization of deliberate and substantial federal involvement in the Commission cannot be ignored. The Fisheries Act imposes substantive obligations on the ASMFC, including the obligation to

base its FMPs on the "best scientific information available" and to provide adequate opportunity for public participation in FMP formation. It renders those FMPs, which are based in part on federal standards, binding on the states parties to the Commission. Representatives of federal agencies cast votes in ASMFC Board meetings. The Commission's budget is over 90% federally funded. In light of this substantial federal involvement in the Commission, it is not unreasonable to conclude that, despite state sovereignty concerns, ASMFC should be treated as a "quasi-federal agency" and subjected to a private right of action under the APA.

Furthermore, were I to hold that ASMFC is not amenable to suit under the APA, any relief ultimately accorded to plaintiffs and intervenor-plaintiffs upon trial of the merits of this matter would be incomplete. Without ASMFC as a defendant, any decision rendered by this Court would not apply to state waters, where more than 90% of recreational summer flounder fishing takes place. This reality, taken together with the substantial federal participation in ASMFC, leads me to conclude that allowing ASMFC actions essentially to escape judicial review is inappropriate.[8]

---

[8] Defendant ASMFC argues that these policy concerns are irrelevant here in light of the Supreme Court's holding that the existence of a private right of action does not turn on whether such a right would be "desirable . . . as a policy matter." *Alexander v. Sandoval*, 532 U.S. 275, 287-88 (2001). As previously explained, however, my analysis here does not turn on whether a private right of action should be implied from the ASMFC Compact or related legislation, but rather on whether the Commission has become so federal in character that it cannot escape the dispute resolution provisions of the APA, which Congress clearly intended to apply to federal agencies. Accordingly, I

## CONCLUSION

For the reasons set forth above, defendant ASMFC's motion is denied. The Clerk is hereby directed to transmit a copy of the within to the parties and the Magistrate Judge.

SO ORDERED.

Dated:   Brooklyn, NY
         March 9, 2009

                By: /s/ Charles P. Sifton (electronically signed)
                    United States District Judge

---

am not precluded from considering policy concerns.